1   Gideon Kracov (State Bar No. 179815)
    LAW OFFICE OF GIDEON KRACOV
2   801 S. Grand Avenue, 11ᵗʰ Floor
    Los Angeles, CA 90017-4645
3   Tel: (213) 629-2 071
    Fax: (213) 623-7755
4   Email: gk@gideonlaw.net

5
    Arthur Pugsley (State Bar No. 252200)
6   Melissa Kelly (State Bar No. 300817)
    LOS ANGELES WATERKEEPER
7   120 Broadway, Suite 105
    Santa Monica, CA 90401
8   Tel: (310) 394-6162
    Fax: (310) 394-6178
9   Email: arthur@lawaterkeeper.org
    Email: melissa@lawaterkeeper.org
10

11  Attorneys for Plaintiff LOS ANGELES WATERKEEPER

12  Scott S. Humphreys (State Bar No. 298021)
    BALLARD SPAHR LLP
13  2029 Century Park East, Suite 800
    Los Angeles, CA 90067-2909
14  Tel. (424) 204-4400
    Fax. (424) 204-4350
15  Email: humphreyss@ballardspahr.com

16  Attorneys for Defendant TRIUMPH PROCESSING, INC.

17

18                  UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
19

20  LOS ANGELES WATERKEEPER, a            Case No.: 2:16-cv-07037 PSG (KSx)

21  non-profit corporation,
                                          [PROPOSED] CONSENT DECREE
22          Plaintiff,                    AND ORDER

23      vs.                               (Federal Water Pollution Control Act,
                                          33 U.S.C. § 1251 *et seq.*)
24  TRIUMPH PROCESSING, INC., a
25  corporation; DOES 1 through 10,       Judge: Hon. Phillip S. Gutierrez

26          Defendants.

27

28

1      **WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit

2 public benefit corporation organized under the laws of the State of California, with its

3 main office in Santa Monica, California;

4      **WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense

5 of the surface, ground, coastal and ocean waters of Los Angeles County from all sources

6 of pollution and degradation;

7      **WHEREAS,** Triumph Processing, Inc. facilities are located at 2588 ("Plant 2) and

8 2605 ("Plant 1") Industry Way in Lynwood, California ("Triumph Facilities" or

9 "Facilities");

10      **WHEREAS,** the Facilities are owned and/or operated by Triumph Processing,

11 Inc., a California corporation ("Defendant" or "Triumph");

12      **WHEREAS,** Triumph as a matter of corporate policy has set as a priority being a

13 good corporate citizen focused on making its local communities better places to live and

14 work;

15      **WHEREAS,** on July 15, 2016, Waterkeeper sent a sixty (60) day notice letter

16 ("Notice Letter") to Defendant, the United States Environmental Protection Agency

17 ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and

18 the Regional Water Quality Control Board ("Regional Board"), stating its intent to file

19 suit for alleged violations of the Federal Water Pollution Control Act, 33 U.S.C.

20 §§ 1251, *et seq.* ("Clean Water Act" or "CWA").  The Notice Letter alleged violations of

21 the CWA for Defendant's alleged discharges of pollutants into storm drains and

22 receiving waters, including Compton Creek ("Creek"), the Los Angeles River ("River")

23 and ultimately the Pacific Ocean (collectively "Receiving Waters"), in alleged violation

24 of National Pollution Discharge Elimination System ("NPDES") General Permit No.

25 CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as

26 superseded by Order No. 2014-0057-DWQ ("2015 Permit").  The 1997 Permit and/or

27 2015 Permit may be referred to generically as the "Storm Water Permit";

28

1  **WHEREAS,** during the 60-Day notice period, Triumph made significant efforts
2  to review and improve stormwater management practices at Plant 1 and Plant 2,
3  including installation of new stormwater management equipment and practices;

4  **WHEREAS,** during the notice period to the present LAW and Triumph have been
5  in comprehensive, good-faith settlement negotiations, including a site visit to Plant 1 and
6  Plant 2 on October 26, 2016, where LAW was able to inspect site conditions and the
7  new stormwater management equipment installed by Triumph;

8  **WHEREAS,** sampling of stormwater discharges at Plant 1 and Plant 2 for the
9  2016-2017 Reporting Year (July 1 to the following June 30) have shown very significant
10  improvement, demonstrating the success of Triumph's new stormwater management
11  equipment and practices, with nearly every sample result below the numeric limits set
12  forth in the EPA's 2015 Multi-Sector General Permit.

13  **WHEREAS,** on October 19, 2016 Waterkeeper filed a complaint ("Complaint")
14  against Defendant in the United States District Court, Central District of California
15  (Case No. 2:16-cv-07037 PSG (KSx)), entitled *Los Angeles Waterkeeper v. Triumph*
16  *Processing, Inc.*

17  **WHEREAS,** the Defendant denies all allegations of the Complaint;

18  **WHEREAS,** Plaintiff and Defendant (collectively referred to herein as the
19  "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into
20  a Consent Decree setting forth terms and conditions appropriate to resolving the
21  allegations set forth in the Complaint without further proceedings;

22  **WHEREAS,** all actions taken by the Defendant pursuant to this Consent Decree
23  shall be made in compliance with all applicable federal, state and local rules and
24  regulations;  .

25  **NOW THEREFORE FOR THE PURPOSE OF THIS CASE IT IS HEREBY**
26  **STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND**
27  **DECREED BY THE COURT AS FOLLOWS:**

28

1      1.     The Court has jurisdiction over the subject matter of this action pursuant to

2  Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

3      2.     Venue is appropriate in the Central District Court pursuant to Section

4  505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facilities at which the

5  alleged violations are taking place is located within this District;

6      3.     The Complaint states a claim upon which relief may be granted against

7  Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

8      4.     Waterkeeper has standing to bring this action;

9      5.     The Court shall retain jurisdiction over this matter for purposes of

10  interpreting, modifying or enforcing the terms of this Consent Decree, for as long as is

11  necessary for the Court to resolve any motion to enforce this Consent Decree.

12  **I.    OBJECTIVES**

13      6.     It is the express purpose of the Parties entering into this Consent Decree to

14  further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to

15  resolve those issues alleged by Waterkeeper in its Complaint. These objectives include

16  compliance with the provisions of this Consent Decree, and compliance with the

17  requirements of the 2015 Permit and all applicable provisions of the CWA which are the

18  subject of this Consent Decree—specifically Receiving Water Limitations A, B and C at

19  Section VI of the 2015 Permit, and Effluent Limitations A, B and C at Section V of the

20  2015 Permit, which require, *inter alia*, that Defendant ensure that industrial storm water

21  discharges and authorized non-stormwater discharges do not cause or contribute to an

22  exceedance of any applicable Water Quality Standards ("WQS"), and implement Best

23  Management Practices ("BMPs") that comply with the Best Available Technology

24  ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of

25  the 2015 Permit. BMPs must be developed and implemented to prevent discharges or to

26  reduce contamination in storm water discharged from the Facilities in compliance with

27  this Consent Decree.

28

## II. EFFECTIVE DATE AND TERMINATION

7.      The term "Effective Date," as used in this Consent Decree, shall mean the date the Court enters the final Consent Decree.

8.      This Consent Decree will terminate on its own terms two (2) years from the Effective Date (the "Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Defendant's compliance with its terms as described in a Notice of Dispute filed with the Court prior to the Termination Date, which Notice shall identify the issue in dispute. The filing of such a Notice of Dispute shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case, or, alternatively, if the Settling Parties file a stipulation for dismissal.

9.      Triumph may move the Court to terminate the Consent Decree at any time provided that the following conditions, or such alternative conditions to which Triumph and Waterkeeper agree in writing after compliance with the meet and confer provisions of paragraph 44 below, are satisfied:

    a. Defendant has fully implemented all measures detailed in paragraph 15 below, and all other applicable requirements to be completed under this Consent Decree prior to the date on which the Defendant moves for termination;

    b. Defendant has revised and fully implemented its Storm Water Pollution Prevention Plans ("SWPPP") and Monitoring and Reporting Programs ("M&RP") pursuant to the requirements of this Consent Decree and the 2015 Permit;

    c. There are no ongoing, unresolved disputes regarding Defendant's compliance with this Consent Decree, including but not limited to any dispute related to the payment of fees/costs, Supplemental Environmental Project ("SEP") implementation, compliance monitoring fees, implementation of storm water and non-storm water control BMPs, and compliance with numeric levels detailed below at Table 1;

d. All payments required under sections F (paras. 35 and 36) and G (paras. 39-41) of this Consent Decree are made; and

e. Following the Effective Date, monitoring data from four (4) consecutive storm water samples collected at each discharge point demonstrate pollutant concentrations in stormwater discharges do not exceed the numeric levels in Table 1;

10.    To terminate early as provided above, Defendant shall file a motion for early termination with the Court. Defendant shall provide Plaintiff and its counsel with written notice at least thirty-five (35) days prior to filing any motion for termination of the Consent Decree.

11.    Upon receipt of the written request to terminate, Waterkeeper may conduct an inspection of the Facilities within thirty (30) calendar days and Triumph will work with Waterkeeper to schedule and accommodate the inspection, if requested, within the 30-day period. During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives access to the Facilities' SWPPP, M&RP, and storm water monitoring records. Further, Defendants shall allow Waterkeeper and/or its representatives to collect during the site inspection split samples of storm water or non-stormwater discharges, if applicable, at the Facilities. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection and will, upon request, provide photographs and/or video to Triumph within fourteen (14) calendar days. Notwithstanding the foregoing, Waterkeeper agrees that all individuals participating in a Site Inspection will execute, and be subject to, waivers, releases and similar agreements as were executed in connection with the Site Inspection conducted on October 26, 2016, including but not limited to those forms establishing restrictions on allowed recorded documentary images or depictions.

12.    Unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, thirty-five (35) calendar days after written notice

1 | was given, Defendant may move the Court to terminate the Consent Decree and

2 | Waterkeeper shall not oppose the motion.

3 | **III.   COMMITMENTS OF THE PARTIES**

4 |     **A.   Industrial Storm Water Pollution Control Measures**

5 |     13.   Any non-stormwater discharges ("NSWDs") from the Facilities must be

6 | authorized by the 2015 Permit or another NPDES permit.

7 |     14.   All storm water pollution measures required by this Consent Decree will be

8 | implemented at the Facilities. Any disputes over the adequacy and/or timing of the

9 | implementation of BMPs shall be resolved pursuant to the dispute resolution provisions

10 | of this Consent Decree, set out in Section IV below.

11 |     15.   BMP Plan. Triumph has implemented or will implement in connection with

12 | the sampling and discharge points depicted in the site maps attached hereto as Exhibit A

13 | the following additional BMPs by March 1, 2017, or the Effective Date of this Consent

14 | Decree, whichever occurs later;

      a. Cover any and all product and crates outside of Plants 1 and 2 with an impermeable material (e.g. tarps, 10-15mm polyethylene sheeting) during a storm event or the threat of a storm event;

      b. Maintain the existing BMP (multiple filter socks) at Discharge Point 2 (of Plant 1) prior to and during any/all storm events. Triumph shall, consistent with the action plan process detailed below in Paragraphs 23-27 of section C, install and maintain a more robust BMP if at any point during the term of this Consent Decree either of the two scenarios exist: i) analytical results demonstrate that the existing BMP is not effective (i.e. according to Paragraph 23 below); or ii) Triumph becomes aware that the existing BMP is being over-topped, is bypassed or provides inadequate opportunity for water contact from discharges;

      c. Perform weekly powered vacuum truck sweeping of all areas of outdoor industrial operations;

      d. Perform daily push-broom sweeping of the 50' x 50' area located directly east of the Plant 1 building and the area directly south of the northern yard wall (with higher potential for pollutant build up within the flow-path for Sample Point 2 at Plant 1);

e. Purchase and employ geo-textile covers for inlets at Sample Points 1 and 2 at Plant 2 for the purpose of preventing pollution from entering inlets during dry weather;

f. Maintain inlets at Sample Points 1 and 2 (at Plant 2) with filters to allow for sampling after water contacts filter media; and

g. Install a berm at Plant 2 to help prevent run-off onto or from neighboring property to the north, and pursue upgrades as needed to achieve adequate water tightness and structural integrity.

**B. Monitoring and Reporting Program (M&RP)**

16. <u>Sample Frequency</u>. The Defendant shall collect storm water samples in the event that discharges occur at the Facilities from at least four (4) qualifying storm events per Reporting Year in accordance with Section XI.B. of the 2015 Permit. Any failure to sample a discharge from each discharge location at the Facilities until the specified four (4) qualifying storm events per Reporting Year have been sampled shall be documented and submitted to Waterkeeper within ten (10) days of the date a sample was required to have been collected but was not.

17. <u>Sample Analysis</u>. The Defendant shall analyze samples collected in accordance with sampling and analysis procedures specified by the Permit for Total Suspended Solids, pH, Oil & Grease, Zinc, Nitrate + Nitrite Nitrogen, Aluminum, Iron, Chromium (total), as well as such additional constituents required by the Permit. The Defendant shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the numeric limits in Table 1.

18. <u>Sample Analysis at Plant 1</u>. The Defendant shall use Sample Point 1 (located prior to any filter medium) for internal evaluation purposes only, and shall collect reportable storm water samples from each of the following locations at Plant 1:

a. Sample Point 2 [Northern Drainage Swale];

b. Sample Point 3 [Southern Roof Drain Outlet].

19. <u>Sample Analysis at Plant 2</u>. The Defendant shall collect storm water samples from each of the following locations at Plant 2:

a. Sample Point Inlet 1 [Control Yard Stormwater Collection Point]; and

b.    Sample Point Inlet 2 [Northern Storm Drain Inlet].

20.   <u>Written Report</u>. Defendant shall submit a written report to Waterkeeper at the end of each Reporting Year listing all storm events that occurred and resulted in a discharge at any of the Facilities' stormwater outfalls. The report shall be submitted on or before July 30 every year during the term of this Consent Decree and must include a table summarizing analytical results from Facilities' storm water samples and comparing those results to the numeric limits in Table 1.

21.   <u>Revising the M&RP</u>. Within thirty (30) calendar days of the Effective Date of this Consent Decree, Defendant shall revise its M&RP within its SWPPP for the Facilities to incorporate the requirements of this Consent Decree and the 2015 Permit. The Defendant shall submit the revised M&RP to Waterkeeper for review and comment as soon as it is completed but in any event no later than within thirty (30) calendar days following the Effective Date. Waterkeeper shall provide comments, if any, to the Defendant within thirty (30) calendar days following receipt of the revised M&RP. The Defendant shall incorporate Plaintiff's comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**C.   Numeric Limits**

22.   <u>Numeric Limits</u>. If sampling results show four or more exceedances of numeric limits in Table 1 at any one of the four Sample Points at Plants 1 and 2 in a single Reporting Year, Triumph shall comply with the requirements specified below in this Section III.C of this Consent Decree.

**Table 1. Numeric Limits**

| Contaminant | Numeric Limits |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.0-9.0 |
| Oil and Grease | 15 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Zinc | 0.117 mg/L |
| Aluminum | 0.75 mg/L |
| Iron | 1.0 mg/L |
| Chromium (total) | Report only |

23.     Action Plan for Table 1 Exceedances during the Consent Decree. In any Reporting Year during which sampling at any one of the four Sample Points at Plants 1 and 2 demonstrates four (4) or more exceedances of numeric limits in Table 1, Triumph shall prepare and submit a plan for reducing and/or eliminating the discharge relating to the relevant Sampling Point(s) of those pollutants exceeding their respective numeric limits ("Action Plan") to Waterkeeper by July 1 following the Reporting Year in which the exceedances giving rise to the obligation to submit an Action Plan occurred. Triumph also shall submit an Action Plan to the Waterkeeper by July 1, 2017, to evaluate and control the presence of chromium in stormwater discharges from Sample Point 1 at Plant 2 based on this evaluation.

24.     Action Plan Requirements. Each Action Plan submitted shall be in writing and shall include, at a minimum: (1) the identification of the pollutant(s) exceeding Table 1's numeric limits, (2) an assessment of the source of each exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the respective numeric limits, and (4) time schedules for implementing proposed BMPs, which shall not exceed the following October 1 unless otherwise agreed by the Parties in writing.  With respect to zinc, Triumph reserves the right to identify in an Action Plan and implement BMPs which Triumph believes comply with the 2015 Permit, including all applicable Effluent and Receiving Water limitations in Sections V and VI of the 2015 Permit, instead of the zinc numeric limit, if BMPs cannot reasonably achieve compliance

1   with the zinc numeric limit. With respect to chromium, the Action Plan instead shall
2   include (1) an assessment of the sources of detected chromium, (2) the identification of
3   additional BMPs that will be implemented to control chromium levels in storm water
4   discharges from the facilities, and (3) time schedules for implementing proposed BMPs,
5   which shall not exceed the following October 1 unless otherwise agreed by the Parties in
6   writing.

7       25.   Action Plan Review. Waterkeeper shall have 30 days upon receipt of
8   Defendant's Action Plan to provide Defendant with comments. Within 30 days from the
9   date of receipt of Waterkeeper's written comments on Defendant's Action Plan,
10  Defendant shall provide Waterkeeper with a written explanation as to the reasons
11  Defendant is not incorporating any particular Waterkeeper comment into its Action Plan.
12  Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the
13  dispute resolution provisions set out in Section IV below.

14      26.   If any structural BMPs require any government agency approval, then
15  Defendant shall contact Waterkeeper to request an extension of the deadline, if
16  necessary, to implement the structural BMPs requiring agency approval. Waterkeeper
17  shall not unreasonably withhold consent to an extension request.

18      27.   Defendant shall have until October 1 following the Reporting Year in which
19  the obligation to submit an Action Plan occurred to implement the Action Plan.
20  Defendant shall notify Waterkeeper in writing when the Action Plan has been
21  implemented.

22      **D.   Storm Water Pollution Prevention Plan**

23      28.   SWPPP Revisions. Within thirty (30) calendar days of the Effective Date
24  of this Consent Decree, Defendant shall revise the SWPPP to comply with Section X.A
25  of the 2015 Permit and this Consent Decree. The Defendant shall submit the revised
26  SWPPP to Waterkeeper for review and comment as soon as it is completed, but in any
27  event no later than thirty (30) calendar days following the Effective Date. Waterkeeper
28

shall provide comments, if any, to Defendant within thirty (30) calendar days of receipt of the SWPPP. Defendant shall incorporate Plaintiff's comments into the SWPPP, or explain in writing why any comment is not incorporated, within thirty (30) calendar days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions set out in Section IV of this Consent Decree.

**E.    Employee Training**

29.    Within thirty (30) calendar days of the Effective Date, Defendant shall review and revise its employee training program established in its SWPPP to comply with the requirements of this Consent Decree and the 2015 Permit, including any training materials, as necessary, for implementation of the training program ("Training Program").

30.    The Training Program shall provide (a) that there be a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (b) that these employees are properly trained to perform the required compliance activities under the 2015 Permit and this Consent Decree. Such Training Program shall be specified in the SWPPP.

31.    The Training Program shall require specific training to include at least the following:

a.    <u>Non-Storm Water Discharge Training.</u>  The Defendant shall train all employees about the 2015 Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are, how to detect them, and how to prevent them;

b.    <u>BMP Training.</u> The Defendant shall train all employees responsible for BMP implementation and maintenance to ensure that BMPs are used effectively to prevent the exposure, discharge, and/or treatment of storm water at the Facilities.

1    c.   Sampling Training. The Defendant shall train all individuals collecting
2  samples at the Facilities pursuant to this Consent Decree or the 2015 Permit on the
3  proper sampling protocols, including chain of custody requirements, to ensure storm
4  water and/or non-storm water samples are properly collected, stored, and submitted to a
5  certified laboratory;

6    d.   Visual Observation Training. The Defendant shall provide training to all
7  individuals performing visual observations at the Facilities pursuant to this Consent
8  Decree and the 2015 Permit.

9    32.   Training shall be provided by a Qualified Industrial Storm Water
10 Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the
11 requirements of this Consent Decree and the 2015 Permit, and shall be repeated as
12 necessary to ensure that all relevant employees are familiar with the requirements of this
13 Consent Decree, the 2015 Permit, and the Facilities' SWPPP. All relevant new staff
14 shall receive this training before assuming responsibilities for implementing the SWPPP
15 or the M&RP.

16    33.   The Defendant shall maintain training records to document compliance with
17 this paragraph, and shall provide Waterkeeper with a copy of these records within
18 fourteen (14) days of receipt of a written request.

19    34.   Annual Site Inspections. Waterkeeper may conduct one annual site
20 inspection ("Site Inspection") on terms substantially identical to those agreed to by the
21 Settling Parties for the October 26, 2016 site visit, which would not include any
22 sampling of stormwater. Site Inspections shall occur during normal business hours, and
23 Waterkeeper will provide Defendant with as much notice as possible, but at least twenty-
24 four (24) hours notice prior to a Site Inspection in anticipation of wet weather, and
25 seventy-two (72) hours notice during dry weather. Notice will be provided by telephone
26 and electronic mail. Waterkeeper agrees that all individuals participating in a Site
27 Inspection will execute, as necessary, waivers, releases and similar agreements.

28

1     **F.**    **Compliance Monitoring and Reporting**

2     35.    <u>Waterkeeper's Compliance Monitoring</u>. Defendant shall pay a total of

3 seven thousand, five hundred dollars ($7,500) to compensate Waterkeeper for costs and

4 fees to be incurred for monitoring Defendant's compliance with this Consent Decree.

5 Payment shall be made within fifteen (15) days of the Effective Date payable to "Los

6 Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite

7 105, Santa Monica, California 90401, and sent via courier or overnight delivery. Failure

8 to submit payment as required under this paragraph will constitute a breach of the

9 Consent Decree.

10     36.    <u>Action Plan Payments</u>. Defendant shall pay three thousand, five hundred

11 dollars ($3,500) for each Action Plan for which the Waterkeeper submits comments

12 under Paragraph 25 above. Payments shall be made payable to "Los Angeles

13 Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105,

14 Santa Monica, CA 90401, and sent via courier or overnight delivery. Failure to submit a

15 payment as required under this paragraph will constitute a breach of the Consent Decree.

16     37.    <u>Data Reporting</u>. During the life of this Consent Decree, Defendant shall

17 provide Waterkeeper with a copy of all Consent Decree and 2015 Permit compliance

18 and monitoring data, including any inspection reports which Triumph is required to

19 maintain under the 2015 Permit, on a quarterly basis. The Defendant shall provide

20 Waterkeeper with all stormwater sampling and analytical results taken at the Facilities

21 within fifteen (15) days of the Defendant's receipt of all results for each sampling event.

22     38.    <u>Document Provision</u>. During the life of this Consent Decree, Defendant

23 shall copy Waterkeeper on all documents and communications related to stormwater

24 discharges at the Facilities that are submitted to the Regional Board, the State Board,

25 and/or any State, local, county, or municipal agency authorized to regulate stormwater.

26 Such reports and documents shall be provided to Waterkeeper concurrently as they are

27 sent to the agencies and/or municipalities. Any correspondence related to stormwater

28

1   discharges received from any such State, county, or municipal regulatory agency, shall
2   be provided to Waterkeeper within five (5) business days of receipt by the Defendant.

3       **G.   Environmental Project, Reimbursement of Litigation Fees and Costs,**
4            **and Stipulated Penalties**

5       39.    Environmental Project. The Defendant agrees to make a payment of thirty
6   thousand dollars ($30,000) within thirty (30) calendar days of the Effective Date to The
7   Rose Foundation for a project related to water quality designed to analyze, reduce,
8   prevent, or otherwise mitigate the ecological and/or public health effects of storm water
9   and/or non-stormwater discharges into Los Angeles area waterbodies. The payment
10  shall be mailed via certified mail or overnight delivery to Tim Little, Rose Foundation
11  for Communities and the Environment, Attn: LA Waterkeeper v Triumph Processing
12  Receiver, 1970 Broadway, Suite 600, Oakland, CA 94612-2218. Defendant shall
13  provide Waterkeeper with a copy of such payment.

14      40.    Reimbursement of Plaintiffs' Fees and Costs. The Defendant agrees to
15  partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs,
16  reasonable attorneys' fees, and other costs incurred as a result of investigating and filing
17  the lawsuit, and negotiating a resolution of this matter in an amount totaling fifty
18  thousand dollars ($50,000). All such payments shall be made payable to Law Office of
19  Gideon Kracov and delivered by certified mail or overnight delivery at 801 S. Grand
20  Av., 11th Floor, Los Angeles, CA 90017.

21      41.    Stipulated Payment. The Defendant shall make a remediation payment of
22  six hundred dollars ($600) for each missed deadline included in this Consent Decree.
23  Payments for a missed deadline shall be made for the restoration and/or improvement of
24  the watershed in the area affected by the Defendant's alleged discharges and shall be
25  awarded to The Rose Foundation, and mailed via certified mail or overnight delivery per
26  the terms described above in Paragraph 39. The Defendant agrees to make the stipulated
27  payment within thirty (30) days of a missed deadline, unless the Waterkeeper agreed in
28

1  writing to an extension of that deadline, and make the payment via overnight delivery or
2  by certified mail. The Defendant shall provide Waterkeeper with a copy of each such
3  payment at the time it is made.

4  **H.    Agency Review of Consent Decree**

5       42.    Plaintiff shall submit this Consent Decree to the United States Department
6  of Justice and the United States Environmental Protection Agency (the Federal
7  Agencies), within three (3) business days of the final signature of the Parties, for agency
8  review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five
9  (45) calendar days after receipt by both agencies, as evidenced by written
10 acknowledgement of receipt by the agencies or the certified return receipts, copies of
11 which shall be provided to Defendant. In the event that the Federal Agencies object to
12 entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve
13 the issue(s) raised by the Federal Agencies.

14 **IV.    DISPUTE RESOLUTION**

15      43.    This Court shall retain jurisdiction over this matter for the purposes of
16 adjudicating all disputes among the Parties that may arise under the provisions of this
17 Consent Decree. The Court shall have the power to enforce this Consent Decree with all
18 available legal and equitable remedies, including contempt.

19      44.    Meet and Confer. Either party to this Consent Decree may invoke the
20 dispute resolution procedures of this Section by notifying the other party in writing of
21 the matter(s) in dispute and of the disputing party's proposal for resolution under this
22 Section. The Parties shall then meet and confer in an attempt to resolve the dispute no
23 later than thirty (30) calendar days from the date of the notice.

24      45.    If the Parties cannot resolve the dispute within 30 days after the meet and
25 confer described in paragraph 44, the Parties agree to request a settlement meeting
26 before the Judge assigned to this action. In the event that the Parties cannot resolve the

27

28

1 dispute by the conclusion of the settlement meeting with the Judge, the Parties agree to
2 submit the dispute via motion to the District Court.

3     46. In resolving any dispute arising from this Consent Decree, the Court shall
4 have discretion to award attorneys' fees and costs to either party. The relevant portions
5 of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil
6 Procedure and applicable case law interpreting such provisions shall govern the
7 allocation of fees and costs in connection with the resolution of any disputes before the
8 District Court. Plaintiff and Defendant agree to file any waivers necessary for the Judge
9 to preside over any settlement conference and motion practice.

10 **V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

11     47. In consideration of the above, upon the Effective Date of this Consent
12 Decree, the Parties hereby fully release, except for claims for Defendant's failure to
13 comply with this Consent Decree and as expressly provided below, each other and their
14 respective successors, assigns, officers, agents, employees, and all persons, firms and
15 corporations having an interest in them, from any and all alleged CWA violations
16 claimed in the Complaint, up to and including the Termination Date of this Consent
17 Decree.

18     48. Nothing in this Consent Decree limits or otherwise affects Plaintiff's or
19 Defendant's respective rights to address or take any position that it deems necessary or
20 appropriate in any formal or informal proceeding before the Regional Board, EPA, or
21 any other judicial or administrative body on any other matter or claim not addressed in
22 this Consent Decree and relating to the Defendant.

23     49. Neither the Consent Decree nor any payment pursuant to the Consent
24 Decree shall constitute or be construed as a finding, adjudication, or acknowledgement
25 of any fact, law or liability, nor shall it be construed as an admission of violation of any
26 law, rule, or regulation. The Defendant maintains and reserves all defenses they may
27 have to any alleged violations that may be raised in the future.

28

1    50.    Force Majeure. The Defendant shall notify Waterkeeper pursuant to the
2 terms of this paragraph, when timely implementation of the requirements set forth in this
3 Consent Decree becomes impossible, despite the timely good-faith efforts of the
4 Defendant, due to circumstances beyond the reasonable control of the Defendant or its
5 agents, and which could not have been reasonably foreseen and prevented by the
6 exercise of due diligence by the Defendant. Any delays due to Defendant's failure to
7 make timely and bona fide applications and to exercise diligent efforts to obtain
8 necessary permits, or due to normal inclement weather, shall not, in any event, be
9 considered to be circumstances beyond Defendant's control. In no circumstances shall a
10 claim of inability to pay be considered Force Majeure.

11      a.      If the Defendant claims impossibility, it shall notify Waterkeeper in writing
12 within twenty-one (21) calendar days of the date that the Defendant first knew of the
13 event or circumstance that caused or would cause a violation of this Consent Decree.
14 The notice shall describe the reason for the nonperformance and specifically refer to this
15 Section. It shall describe: i) the anticipated length of time the delay may persist; ii) the
16 cause or causes of the delay; iii) the measures taken or to be taken by the Defendant to
17 prevent or minimize the delay; iv) the schedule by which the measures will be
18 implemented; and v) the anticipated date of compliance. The Defendant shall adopt all
19 reasonable measures to avoid and minimize such delays.

20      b.      The Parties shall meet and confer in good-faith concerning the non-
21 performance and, where the Parties concur that performance was or is impossible,
22 despite the timely good faith efforts of the Defendant, due to circumstances beyond the
23 control of Defendant that could not have been reasonably foreseen and prevented by the
24 exercise of due diligence by the Defendant, the Parties shall agree upon new deadlines.

25      c.      If Waterkeeper disagrees with the Defendant's notice, or in the event that
26 the Parties cannot timely agree on the terms of new performance deadlines or
27 requirements, either party shall have the right to invoke the Dispute Resolution

28

1 Procedure pursuant to Section IV. In such proceeding, the Defendant shall bear the
2 burden of proving that any delay in performance of any requirement of this Consent
3 Decree was caused or will be caused by force majeure and the extent of any delay
4 attributable to such circumstances.

5 **VI.    MISCELLANEOUS PROVISIONS**

6        51.    Construction. The language in all parts of this Consent Decree shall be
7 construed according to its plain and ordinary meaning, except as to those terms defined
8 in the 2015 Permit, the Clean Water Act, or specifically herein.

9        52.    Choice of Law. The laws of the United States shall govern this Consent
10 Decree.

11       53.    Severability. In the event that any provision, paragraph, section, or
12 sentence of this Consent Decree is held by a court to be unenforceable, the validity of
13 the enforceable provisions shall not be adversely affected.

14       54.    Correspondence. All notices required herein or any other correspondence
15 pertaining to this Consent Decree shall be sent by regular mail or electronic mail as
16 follows:

17
18        If to Plaintiff:

19        Arthur Pugsley
20        Melissa Kelly
         Staff Attorney
21        Los Angeles Waterkeeper
22        120 Broadway, Suite 105
         Santa Monica, CA 90401
23        arthur@lawaterkeeper.org
24        melissa@lawaterkeeper.org
25
26
27
28

With copies to:

Bruce Reznik
Executive Director
Los Angeles Waterkeeper
bruce@lawaterkeeper.org

If to Defendant:

Glenn Unterberger (Penn. Bar No. 58667)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
unterberge@ballardspahr.com

With copies to:

Ashok Advani, General Manager
Triumph Processing Inc.
2605 Industry Way
Lynwood, California 90262
aadvani@triumphgroup.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

55. Effect of Consent Decree. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

56. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

57. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

58. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

59. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

60. Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree.

61. The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

62. The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this [Proposed] Consent Decree as of the date set forth below.

LOS ANGELES WATERKEEPER

Dated: 24 March 2017 MK

by: _____
Melissa Kelly
Attorney for Plaintiff
LA Waterkeeper

LOS ANGELES WATERKEEPER

Dated: 24 March 2017

by: _____
Bruce Reznik
Executive Director
LA Waterkeeper

BALLARD SPAHR LLP

Dated: 24 March 2017

by: _____
Scott S. Humpheys
Attorneys for Defendant
Triumph Processing, Inc.

TRIUMPH PROCESSING, INC.

Dated: 17 March 2017

by: _____
Bill Boyd, President
Triumph Processing, Inc.

1    **IT IS SO ORDERED:**

2    Date: ___5/16/17_____

        PHILIP S. GUTIERREZ

3                                Honorable Philip S. Gutierrez
                                 DISTRICT COURT JUDGE
4                                CENTRAL DISTRICT OF CALIFORNIA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28